Michael A. D'Aquanni, Esq. (5394)
**ROTH HOROWITZ, LLC**
150 Morris Avenue – Suite 206
Springfield, New Jersey 07081
(973) 258-1288
mdaquanni@rothhorowitz.net
Attorneys for Plaintiff Estate of Tyree Wilson

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ESTATE OF TYREE WILSON, by his Administratrix ad prosequendum, Pamela F. Wilson and Terrance Wilson, Sr., PAMELA WILSON, individually, and TERRANCE WILSON, SR., individually, | : : : : : : | DOCKET NO.:  07-cv-1942 (WJM) |
| *Plaintiffs,* | : : : | *CIVIL ACTION* |
| vs. | : : : | |
| NORTHERN STATE PRISON, NEW JERSEY DEPARTMENT OF CORRECTIONS, DEVON BROWN, individually and in his official capacity as Commissioner of the New Jersey Department of Corrections, LYDELL SHERRER, Administrator, individually and in his official capacity as Administrator of Northern State Prison, CORRECTIONAL MEDICAL SERVICES, INC., a Missouri Corporation, ABC Corporation, Inc.; CFG HEALTH SYSTEMS, LLC, DR. HAROLD GOLDSTEIN, DR. ALICIA CAPUTO, DR. PETER MARTINDALE, DR. SCOTT MILLER, DR. DONNA RICCA, DR. LAWRENCE WEINBERGER, DR. SURESHABBA KURRA, DR. STEVEN REED, DR. JOHN GODINSKY, DR. RANDI HERSHKOWITZ, JOHN DOES 1-10 and JANE DOES 1-10. | : : : : : : : : : : : : : : : : | **FIRST AMENDED COMPLAINT & JURY DEMAND** |
| *Defendants.* | | |

1

**COMES NOW** the Estate of Tyree Wilson, by and through its Personal Representatives, (hereinafter collectively referred to as "Plaintiffs") and for claims against the Defendants hereby allege, complain and claim as follows:

## I.

## PLAINTIFFS

1. **Tyree Wilson.** Tyree Wilson, now deceased, was at all times relevant herein a resident of the City of Newark, County of Essex, State of New Jersey, at the time of his death.

2. **Estate of Tyree Wilson.** The Estate of Tyree Wilson is suing for the pain, suffering, shock, agony, and personal injury incurred by him before his death at the hands of the Defendants, and/or their unknown agents on January 16, 2005. This claim is being presented by and through administrators ad prosequendum Pamela F. Wilson and Terrance D. Wilson, Sr.

3. **Pamela F. Wilson.** Pamela F. Wilson is the mother of Tyree Wilson, and at all times relevant herein a resident of the City of Willingborough, County of Burlington, State of New Jersey, 62 Montclair Lane, at the time of his death.  She is suing for the loss of the support, comfort, care, protection and society of her son, Tyree Wilson, as well as for the civil rights violations, personal injuries and other harm inflicted upon or caused to her by the wrongful acts or omissions of Defendants and/or their agents.

4. **Terrance D. Wilson, Sr.** Terrance D. Wilson, Sr. is the father of Tyree Wilson, and at all times relevant herein a resident of the City of Willingborough, County of Burlington, State of New Jersey, 56 Goodwin Lane, at the time of his death.  He is suing for loss of the support, comfort, care, protection and society of his son, Tyree Wilson, as well as for the civil rights violations, personal injuries and other harm inflicted upon or caused to him by the wrongful acts or omissions of Defendants and/or their agents.

## II.

## <u>DEFENDANTS</u>

5. **Northern State Prison**. The Northern State Prison, located at Frontage Road, Newark, New Jersey 07114, is a facility operated and controlled by the New Jersey Department of Corrections, and is responsible for the hiring, supervision, training and retention of corrections personnel at that facility, and is being sued under 42 U.S.C. § 1983 for the actions of its agents and employees and for failing to train, negligently training, failing to supervise and negligently supervising these agents and employees, with deliberate indifference to the rights of the Plaintiff.

6. **New Jersey Department of Corrections and Devon Brown.** At the time this cause of action arose, Commissioner of the New Jersey Department of Corrections, in his official capacity, responsible for establishing the policies and procedures for the hiring, supervision, training and retention of corrections personnel within the State Department of Corrections as well as Northern State Prison, and is being sued under 42 U.S.C. § 1983 for the actions of agents and employees of the New Jersey Department of Corrections, Northern State Prison, for failing to train, negligently training, failing to supervise and negligently supervising these agents and employees, with deliberate indifference to the rights of the Plaintiff.

7. **Lydell Sherrer.** Administrator, Northern State Prison, Frontage Road, Newark, New Jersey 07114, responsible for the detention, housing and care of Tyree Wilson, as well as responsible for establishing the policies and procedures of the Defendant Northern State Prison, with regard to responding to inmate complaints and the provision of medical attention to inmates, as well as policies related to the designation of suicidal inmates, treatment of such inmates and hiring and training of personnel in this regard.

8. **Correctional Medical Services, Inc.** Defendant Correctional Medical Services, Inc., whose principal place of business and headquarters are 12647 Olive Boulevard, St. Louis, Missouri, does business in the State of New Jersey, upon information and belief, with the New Jersey Department of Corrections.  Upon information and belief, Correctional Medical Services, Inc. and/or its parent company or companies or subsidiaries independently contract with the Northern State Prison or its authorized agent to provide medical care and treatment to inmates in the facility.

9. **CFG Health Systems, LLC**, whose principal place of business and headquarters are 765 East Route 70, Marlton, New Jersey, 08053, does business in the State of New Jersey, upon information and belief, with the New Jersey Department of Corrections.  Upon information and belief, CFG Health Systems, LLC, and/or its parent company or companies or subsidiaries independently contract with the Northern State Prison or its authorized agent to provide psychiatric and psychological care and treatment to inmates in the facility.

10. **Dr. Harold Goldstein**, formerly identified in the initial Complaint as "John Doe", was Plaintiff's treating physician, psychiatrist and/or psychologist, at the Northern State Prison, responsible for the care, treatment and diagnosis of the Plaintiff's mental condition and capacity to do harm to himself.

11. **Dr. Alicia Caputo**, formerly identified in the initial Complaint as "Jane Doe", was Plaintiff's treating physician, psychiatrist and/or psychologist, at the Northern State Prison, responsible for the care, treatment and diagnosis of the Plaintiff's mental condition and capacity to do harm to himself.

12. **Dr. Peter Martindale**, formerly identified in the initial Complaint as "John Doe", was Plaintiff's treating physician, psychiatrist and/or psychologist, at the Northern State Prison, responsible for the care, treatment and diagnosis of the Plaintiff's mental condition and capacity to do harm to himself.

13. **Dr. Scott Miller,** formerly identified in the initial Complaint as "John Doe", was Plaintiff's treating physician, psychiatrist and/or psychologist, at the Northern State Prison, responsible for the care, treatment and diagnosis of the Plaintiff's mental condition and capacity to do harm to himself.

14. **Dr. Donna Ricca,** formerly identified in the initial Complaint as "Jane Doe", was Plaintiff's treating physician, psychiatrist and/or psychologist, at the Northern State Prison, responsible for the care, treatment and diagnosis of the Plaintiff's mental condition and capacity to do harm to himself.

15. **Dr. Lawrence Weinberger,** formerly identified in the initial Complaint as "John Doe", was Plaintiff's treating physician, psychiatrist and/or psychologist, at the Northern State Prison, responsible for the care, treatment and diagnosis of the Plaintiff's mental condition and capacity to do harm to himself.

16. **Dr. Sureshabba Kurra,** formerly identified in the initial Complaint as "John Doe", was Plaintiff's treating physician, psychiatrist and/or psychologist, at the Northern State Prison, responsible for the care, treatment and diagnosis of the Plaintiff's mental condition and capacity to do harm to himself.

17. **Dr. Steven Reed,** formerly identified in the initial Complaint as "John Doe", was Plaintiff's treating physician, psychiatrist and/or psychologist, at the Northern State Prison, responsible for the care, treatment and diagnosis of the Plaintiff's mental condition and capacity to do harm to himself.

18. **Dr. John Godinsky,** formerly identified in the initial Complaint as "John Doe", was Plaintiff's treating physician, psychiatrist and/or psychologist, at the Northern State Prison, responsible for the care, treatment and diagnosis of the Plaintiff's mental condition and capacity to do harm to himself.

19. **Dr. Randi Hershkowitz**, formerly identified in the initial Complaint as "John Doe", was Plaintiff's treating physician, psychiatrist and/or psychologist, at the Northern State Prison, responsible for the care, treatment and diagnosis of the Plaintiff's mental condition and capacity to do harm to himself.

20. **John Does 1 through 10**. John Does 1 through 10 are agents and employees of the Northern State Prison and/or New Jersey Department of Corrections, and/or Correctional Medical Services, and/or ABC Corporation, individually and under color of state law. John Doe Defendants are being sued in their official and individual capacities assault, battery, negligence, gross negligence, and civil rights violations as set forth below.

21. **Jane Does 1 through 10**. Jane Does 1 through 10 are agents and employees of the Northern State Prison and/or New Jersey Department of Corrections and/or Correctional Medical Services, and/or ABC Corporation, individually and under color of state law. Jane Doe Defendants are being sued in their official and individual capacities for assault, battery, negligence, gross negligence, and civil rights violations as set forth below.

22. **ABC Corporation**. ABC Corporation and/or its parent company or companies or subsidiaries, individually and under color of state law, independently contract with the Northern State Prison or its authorized agent to provide medical care and treatment to inmates in the facility. ABC Corporation is being sued in for negligence, gross negligence, medical malpractice, and civil rights violations as set forth below.

### III.

### COMPLIANCE WITH NEW JERSEY TORT CLAIMS ACT

23. Plaintiffs have complied in all particulars with the provisions and requirements of the New Jersey Tort Claims Act, serving notice on Defendants on or about April 12, 2005.

## IV.

### JURISDICTION

24. The claims set forth herein are being submitted pursuant to 42 U.S.C. § 1983 as well as common law.

25. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343(a)(3) and (4), 2201 and 2202. The asserted rights and interests of the Plaintiff exceed seventy five thousand dollars ($75,000.00) exclusive of interest and costs. The substantive claims herein arise under 42 U.S.C. § 1983 and the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

26. Venue is properly before the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2). Plaintiff Tyree Wilson was an inmate at the Northern State Prison, located in Essex County, State of New Jersey, at the time of his death.

## V.

### SCOPE OF EMPLOYMENT/RATIFICATION

27. Tyree Wilson died at the Northern State Prison in Newark, New Jersey, on or about January 16, 2005. The Northern State Prison is a prison facility under the management and control of the New Jersey Department of Corrections.

28. Tyree Wilson was an inmate at the Northern State Prison at the time of his death. At the time of his death, Tyree Wilson was a ward of the State of New Jersey, County of Essex, and New Jersey Department of Corrections.

29. Tyree Wilson did not proximately cause or otherwise contribute to the injuries that led to his death. Instead, Tyree Wilson died as a result of injuries deliberately, wantonly and maliciously inflicted upon him by presently unknown agents and employees of the Defendants.

30. Tyree Wilson died as a result of a deliberate refusal by the individual Defendants, and/or other presently unknown agents and employees of the Northern State Prison to promptly provide him with the necessary medical care and attention to treat his serious injuries, and/or other life threatening conditions.

31. Those individuals responsible for Tyree Wilson's injuries and resulting death were officers, agents and/or employees of the Northern State Prison and were, therefore, "investigative or law enforcement officers".

32. The injuries and wrongs constituting the claims set forth herein were perpetrated upon Plaintiffs by the individual Defendants and/or other presently unknown officers, agents and/or employees of the Northern State Prison while acting within the scope and in furtherance of their office, agency, and/or employment.

33. The injuries and wrongs constituting the claims set forth herein were perpetrated upon Plaintiffs by the individual Defendants and/or other presently unknown officers, agents and/or employees of the Northern State Prison pursuant to the authorization, either express or implied, of the State of New Jersey, Department of Corrections, Northern State Prison.

34. The wrongful acts and omissions by the individual Defendants complained of herein were also subsequently ratified, confirmed, and approved by the Northern State Prison, New Jersey Department of Corrections.

## VI.

## PATTERN OR COURSE OF CONDUCT

35. Within the New Jersey Department of Corrections and more specifically, the Northern State Prison, there is an invidious and discriminatory custom, practice or policy of protecting employees and/or guards who have intentionally beaten, brutalized and/or otherwise violated

8

the civil rights of inmates. Rather than prosecuting, disciplining or discharging such agents and employees, pursuant to this custom, either no action is taken or the practice or policy is that these agents or employees are transferred to other facilities.

36. Pursuant to this custom, practice or policy, State of New Jersey, Department of Corrections, Northern State Prison, also invidiously discriminate against inmates and their families by intentionally, deliberately, and wantonly suppressing any investigation into and/or prosecution of guards responsible for violating the civil rights of inmates through harassment, assault and battery.

37. As a result of this custom, practice or policy of protecting rather than disciplining or discharging guards who are known to violate the civil rights of inmates, Defendants recruited, allowed and encouraged a number of such guards with known histories of intentionally harming and abusing the civil rights of inmates to be transferred to and become part of the staff at the Northern State Prison.

38. Prior to, on and after January, 2005, it was known to Defendants that guards at the Northern State Prison were denying medical attention, using excessive force to intentionally and deliberately inflict upon inmates unnecessary and wanton injury, pain and suffering, as well as retaliate against inmates for exercising their rights pursuant to the First, Eighth and Fourteenth Amendments to the U.S. Constitution.

39. Despite such knowledge and existing duty, however, Defendants showed deliberate indifference to the situation knowing that by doing so they were creating a substantial risk of certain harm to inmates such as Tyree Wilson.

## VII.

## GENERAL FACTUAL ALLEGATIONS

40. Plaintiff Tyree Wilson, while incarcerated as an inmate at Northern State Prison, Newark, New Jersey, died on or about January 16, 2005.

41. Having been on suicide watch on at least two occasions prior to Decedent's death, and exhibiting extreme symptoms of suicidal tendencies, including but not limited to suicidal ideation, self-inflicted injuries, and symptoms of schizophrenia or other serious medical conditions, all Defendants knew or should have known of the particular substantial vulnerability of Decedent to suicide.

42. Decedent was evaluated by a physician, psychiatrist, psychologist, and/or RN, including but not limited to those individual Defendants identified in this Complaint, who failed to properly treat and/or diagnose decedent's condition.

43. The examining and/or treating physicians, psychiatrists, psychologists were employed by CFG Health Systems, LLC, within the Northern State Prison or other correctional facilities. At the conclusion of the purported examinations, the physician, psychiatrist, psychologist, and/or RN, including but not limited to those individual Defendants identified in this Complaint, failed to properly treat and/or diagnose decedent's condition.

44. Defendants did not use the care and skill ordinarily used by physicians engaged in the practice of medicine in New Jersey, or in similar localities. Although Decedent had symptoms indicating, among others, severe clinical depression and suicidal tendencies, Defendants, their agents or employees, negligently and incorrectly diagnosed decedent's condition and failed to properly medicate decedent. If the Defendants, their agents or employees had used proper methods of examination and/or used the care and skill ordinarily

used by physicians engaged in the practice of medicine, Defendants, their agents or employees would have discovered Decedent's condition, which required immediate treatment to prevent risk of suicide, death and/or serious injury.

45. Tyree Wilson is deceased as the result of a suicide.

46. On January 16, 2005, presently unknown officers, agents and/or employees of the Northern State Prison did deliberately use excessive force against Tyree Wilson with intent to inflict unnecessary and wanton pain, injury, and suffering upon him.

47. These presently unknown officers, agents and/or employees of State of New Jersey, Department of Corrections, Northern State Prison did intentionally use such excessive force upon Tyree Wilson with the intent of inflicting serious bodily harm and even death upon Tyree Wilson and/or acted so recklessly as to create a substantial as well as certain risk of serious bodily harm or death to Tyree Wilson. The use of this excessive force by these presently unknown officers, agents and/or employees of the State of New Jersey, Department of Corrections, Northern State Prison, did in fact result in Tyree Wilson's serious bodily injury and eventual death.

48. Tyree Wilson did sustain massive injury inflicted upon him by these presently unknown officers, agents and/or employees through the use of unknown means. This trauma inflicted upon Tyree Wilson was intended to and did result in his extreme pain and suffering. Furthermore, from the time of the assault until his eventual death, Tyree Wilson suffered great physical and mental pain, shock, and agony.

49. Thereafter, Defendants and these presently unknown officers, agents and/or employees did show deliberate indifference to Tyree Wilson's serious medical needs by denying him medical care and treatment for the life threatening injuries which they had inflicted upon him prior to death.

## VIII.
## CLAIMS FOR RELIEF

### FIRST COUNT
### (Assault and Battery)

50. Plaintiffs hereby reallege and incorporate by reference the allegations contained in the preceding paragraphs.

51. The fatal attack upon Tyree Wilson by presently unknown officers, agents and/or employees of State of New Jersey, Department of Corrections, Northern State Prison. was expressly or implicitly authorized by Defendants; fairly and naturally incident to operations at the Northern State Prison.

52. As a direct, proximate, and natural result of the wrongful acts and omissions by the individual Defendants and other unknown agents and/or employees of the State of New Jersey, Department of Corrections, Northern State Prison, as described hereinabove, Plaintiffs have suffered and continue to suffer special and general damages in amounts that together with prejudgment interest will be proven at trial.

53. The nature of the special damages inflicted upon Plaintiffs by the individual Defendants and other agents and employees are such that they continue and increase daily. Nevertheless, among the special damages for which Plaintiffs now make claim against the Defendants are for the funeral and burial expenses of Tyree Wilson, together with prejudgment interest as allowed by law.

WHEREFORE, on all claims Plaintiffs pray judgment against Defendants, and each of them, as follows:

      a.  For the Estate of Tyree Wilson, an award of general damages in an amount to be proven at trial, together with prejudgment interest as allowed by law.

b.  For Plaintiffs, an award of special damages in an amount to be proven at trial, together with prejudgment interest as allowed by law.

c.  For Plaintiffs, an award of punitive damages sufficient to punish or make an example of the individual Defendants.

d.  For Plaintiffs, an award of their attorneys' fees and costs of suit.

e.  For Plaintiffs, such other and further relief as to the Court seems just, merited and proper.

## SECOND COUNT

### (Negligence/Malpractice)

54. Plaintiffs hereby reallege and incorporate by reference the allegations contained in the preceding paragraphs.

55. At the time of his death, Tyree Wilson was under the sole and exclusive custody, control, and supervision of the State of New Jersey, Department of Corrections, Northern State Prison, which was responsible for the care, health, safety and welfare of all prisoners within their custody, including Tyree Wilson.

56. Defendants, therefore, owed to Tyree Wilson a duty to exercise extraordinary care in providing for his care, safety, health and welfare. This duty of care, which Defendants owed to Tyree Wilson, included, among others, the duty to protect Tyree Wilson from assaults and attacks upon his person and to promptly provide him with medical attention for his injuries.

57. This heightened duty of care owed by Defendants to Tyree Wilson was in fact breached when he was attacked, by presently unknown agents and employees of the State of New Jersey, Department of Corrections, Northern State Prison.

58. The death of Tyree Wilson was also not of a type that ordinarily occurs in the absence of a breach of duty and, as such, Tyree Wilson's death could not have occurred but for a breach of this duty of care owed to him by Defendants. Defendants are thus strictly liable for Tyree Wilson's death and the resulting injury to Plaintiffs.

59. As a direct, proximate, and natural result of the wrongful acts and omissions by the individual Defendants and other presently unknown agents and/or employees of the State of New Jersey, Department of Corrections, Northern State Prison, as described hereinabove, Plaintiffs have suffered and continue to suffer special and general damages in amounts that together with prejudgment interest will be proven at trial.

60. The nature of the special damages inflicted upon Decedent by the individual Defendants and other agents and employees of the State of New Jersey, Department of Corrections, Northern State Prison, are such that they continue and increase daily.

61. Decedent, being mentally ill, and having been brought to the care of CFG Health Systems employees and placed on suicide watch on two separate occasions within the Northern State Prison, failed to identify, diagnose or treat the illness, and the individual Defendants entered on such service on at least two separate occasions.

62. Defendants examined Decedent, but in doing so did not use the care and skill ordinarily used by physicians engaged in the practice of medicine in New Jersey, or in similar localities.

63. Although Decedent presented with the common symptoms of mental illness indicating substantial risk of danger to himself during his incarceration, Defendants on at least two occasions, negligently and incorrectly diagnosed Decedent's condition as fraudulent and self-conceived, and failed to treat Decedent with medication, further evaluation or therapy/counseling.

64. If the Defendants had used proper methods of examination and/or used the care and skill ordinarily used by individuals engaged in the practice of medicine, Defendants would have discovered that

Plaintiff was suffering from a mental illness which required immediate medical treatment to effect a cure and prevent risk of death and/or serious injury.

65. As a direct and proximate result of the negligence described above, Decedent's medical condition reached an advanced stage and resulted in Decedent's mental anguish, depression and suicide.

66. Defendant CFG Health Systems, hired and had control, maintained and/or supervised the individually named Defendants identified above.

67. Defendant CFG Health Systems is liable under the doctrine of respondeat superior. As a result of such negligence Defendant CFG Health Systems and/or its presently unknown independent contractors, agents, representatives, employees, etc., Decedent suffered pain and suffering and ultimately loss of life.

68. The above-mentioned injuries and conditions were caused and brought about by the negligence of Defendant employees of Defendant CFG Health Systems, which negligence is imputable to Defendant CFG Health Systems in negligent hiring and/or failing to properly train, control, maintain and/or supervise Defendants.

69. As a direct and proximate result of the negligence as set forth above, Plaintiff has suffered damages.

70. WHEREFORE, Plaintiff requests judgment for compensatory and punitive damages against these Defendants, together with attorney's fees, and costs of suit, and such other and further relief as the court deems proper.

WHEREFORE, on all claims Plaintiffs pray judgment against Defendants, and each of them, as follows:

a. For the Estate of Tyree Wilson, an award of general damages in an amount to be proven at trial, together with prejudgment interest as allowed by law.

b. For Plaintiffs, an award of special damages in an amount to be proven at trial, together with prejudgment interest as allowed by law.

c. For Plaintiffs, an award of punitive damages sufficient to punish or make an example of the individual Defendants.

d. For Plaintiffs, an award of their attorneys' fees and costs of suit.

e. For Plaintiffs, such other and further relief as to the Court seems just, merited and proper.

## THIRD COUNT

### (Civil Rights Violations)

71. Plaintiffs hereby reallege and incorporate by reference the allegations contained in the preceding paragraphs.

72. Such conduct of these Defendants as described above was objectively unreasonable under the circumstances and constituted excessive force in violation of the Fourth Amendment and constituted cruel and unusual punishment in violation of the Eight Amendment to the United States Constitution and the Constitution of the State of New Jersey.

73. Such further failure to provide medical attention and refusal to provide immediate attention under the circumstances constituted a denial of the due process right under the Fourteenth Amendment to proper medical care while incarcerated.

74. These Defendants had actual or constructive knowledge, and knew or should have known that Plaintiff was in need of immediate and proper medical care and attention.

75. These Defendants exhibited deliberate indifference towards requests for proper medical care from Plaintiff, which constituted a denial of the due process right under the 14th Amendment to medical care and the Constitution of the State of New Jersey.

76. As a direct and proximate result of the deprivation of proper medical treatment for Plaintiff by Defendants, Plaintiff suffered a deprivation of his civil rights, severe physical pain, mental anguish and emotional trauma.

77. As a direct and proximate result of the deprivation of proper medical treatment for Plaintiff by Defendants, Plaintiff suffered the deprivation of his due process rights guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution of the State of New Jersey.

78. Defendants, their agents and employees, with knowledge of Plaintiff's medical needs, and/or with deliberate indifference to such medical needs, have acted or failed to act in such a way as to deprive Plaintiff of necessary and adequate medical care, thereby endangering Plaintiff's health and well-being, resulting in death. Such acts and omissions of the Defendants violate rights secured to the Plaintiff under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution of the State of New Jersey.

79. Defendants, their agents and employees, with knowledge of Plaintiff's medical needs, and/or with deliberate indifference to such medical needs, have acted or failed to act in such manner as to prevent Plaintiff from obtaining needed medical treatment and care and/or to prevent needed medical treatment and care from reaching Plaintiff thereby endangering Plaintiffs' health and well-being, resulting in death. Such acts and omissions of the Defendants violate rights secured to the Plaintiff under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution of the State of New Jersey.

80. Defendants, their agents and employees, with knowledge of Plaintiff's medical needs have a duty under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution of the State of New Jersey to provide needed medical care to inmates of the Northern

State Prison in conformity with the standards for delivery of such medical care in the State of New Jersey as a whole.

81. Defendants, their agents and employees, with knowledge of Plaintiff's medical needs, or with deliberate indifference to such medical needs, acted or failed to act in such a way as to provide medical care to Plaintiff in conformity with the standard for delivery of such medical care in the State of New Jersey as a whole and have in fact provided medical care which does not meet such standards thereby endangering the Plaintiff's health and well-being in violation of rights secured to Plaintiff by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution of the State of New Jersey.

WHEREFORE, on all claims Plaintiffs pray judgment against Defendants, and each of them, as follows:

    a. For the Estate of Tyree Wilson, an award of general damages in an amount to be proven at trial, together with prejudgment interest as allowed by law.

    b. For Plaintiffs, an award of special damages in an amount to be proven at trial, together with prejudgment interest as allowed by law.

    c. For Plaintiffs, an award of punitive damages sufficient to punish or make an example of the individual Defendants.

    d. For Plaintiffs, an award of their attorneys' fees and costs of suit.

    e. For Plaintiffs, such other and further relief as to the Court seems just, merited and proper.

## FOURTH COUNT

### (Failure to Train/Supervision in violation of 42 U.S.C. § 1983)

82. Plaintiffs hereby incorporate the preceding paragraphs set forth above as if fully set forth herein.

83. Defendant Northern State Prison is required to supervise the actions of its agents and employees.

84. Defendants created an unreasonable risk of harm to the Plaintiff by failing to adequately supervise, control or otherwise monitor the actions of its employees.

85. Defendants have caused damages by way of negligent supervision; and, the Plaintiff is entitled to recover against Defendants for deprivation of his civil rights, injuries, damages and losses.

86. Defendants, knowing of the medical needs of Plaintiff, and knowing also of the inadequacies and deficiencies in the medical facilities, staffing and procedures at the facility, have a duty under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution of the State of New Jersey to establish and implement policies, practices and procedures designed to assure that Plaintiff and those similarly situated receive medical care and treatment in conformity with the standards for delivery of such medical care and treatment in the State of New Jersey as a whole.

87. Defendants, knowing of the medical needs of Plaintiff, and with deliberate indifference to the inadequacies and deficiencies in the medical facilities staffing and procedures at the facility, and to Plaintiff's needs, have failed and neglected to establish and implement policies, practices and procedures designed to assure that Plaintiff and those similarly situated receive medical treatment and care at the standards in New Jersey as a whole, or have adopted policies, practices and procedures which defendants knew, or reasonably should have known, would be ineffective in delivering medical treatment and care at such standards, thereby endangering the Plaintiff's health and well-being in violation of rights secured to Plaintiff by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution of the State of New Jersey.

88. Defendants, knowing of the medical needs of Plaintiff have a duty under the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States to instruct, supervise and train their employees and agents to assure the delivery of medical care to Plaintiff which is consistent with the standards of medical care in the State of New Jersey as a whole.

89. The Defendants' actions and/or omissions were committed under color of law and/or pursuant to policies, customs, practices, rules, regulations, ordinances, and/or statutes.

90. As a direct and proximate result of the above described actions and omissions of Defendants, Plaintiff has suffered damages.

91. Defendants are also required to adequately train its agents and employees.

92. Defendants created an unreasonable risk of harm to the Plaintiff for failing to adequately train its employees Defendants. Specifically, Defendants were negligent for failing to adequately train its employees regarding the provision of medical attention to inmates who they knew or should have known were suicidal.

93. Defendants caused injuries, damages and losses to the Plaintiff by virtue of its negligent training; and, the Plaintiff is entitled to recover against the Defendants for the injuries, damages and losses caused by the Defendant's conduct as set forth herein.

94. Defendants knowing of the medical needs of Plaintiff or with deliberate indifference to such needs, have failed to instruct, supervise and train their employees and agents in such a manner as to assure the delivery of medical care to Plaintiff which is consistent with the standards of medical care in the State of New Jersey as a whole thereby endangering the Plaintiff's health and well-being in violation of rights secured to Plaintiff and those similarly situated by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution of the State of New Jersey.

95. The Defendants' actions and/or omissions were committed under color of law and/or pursuant to policies, customs, practices, rules, regulations, ordinances, statutes and/or usages of the State of New Jersey.

96. As a direct and proximate result of the above described actions and omissions of defendants, Plaintiff has suffered damages.

WHEREFORE, on all claims Plaintiffs pray judgment against Defendants, and each of them, as follows:

    a.  For the Estate of Tyree Wilson, an award of general damages in an amount to be proven at trial, together with prejudgment interest as allowed by law.

    b.  For Plaintiffs, an award of special damages in an amount to be proven at trial, together with prejudgment interest as allowed by law.

    c.  For Plaintiffs, an award of punitive damages sufficient to punish or make an example of the individual Defendants.

    d.  For Plaintiffs, an award of their attorneys' fees and costs of suit.

    e.  For Plaintiffs, such other and further relief as to the Court seems just, merited and proper.

## FIFTH COUNT

### (Wrongful Death)

97. Plaintiffs hereby incorporate the preceding paragraphs set forth above as if fully set forth herein.

98. The actions and inactions of all Defendants caused the death of Tyree Wilson.

99. As a direct and proximate cause of the Defendants' actions and inactions, the Plaintiffs have been harmed.

WHEREFORE, the plaintiff demands judgment against the defendants, together with interest and costs of suit.

## SIXTH COUNT

### (Survivorship)

100.   Plaintiffs hereby incorporate the preceding paragraphs set forth above as if fully set forth herein.

101.   The actions and inactions of all Defendants caused the death of Tyree Wilson.

102.   As a direct and proximate cause of the Defendants' actions and inactions, the Plaintiffs have been harmed.

WHEREFORE, the plaintiff demands judgment against the defendants, together with interest and costs of suit.

## JURY DEMAND

The Plaintiffs hereby demands a trial by jury as to all issues.

**ROTH HOROWITZ, LLC**

By:_____

Michael A. D'Aquanni, Esq.
Attorney for Plaintiff

DATED:  August 9, 2007

## DESIGNATION OF TRIAL COUNSEL

Michael A. D'Aquanni, Esq., is hereby designated as trial counsel in the above referenced matter.

**ROTH HOROWITZ, LLC**

By:_____

Michael A. D'Aquanni, Esq.
Attorney for Plaintiff

DATED:  August 9, 2007