# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
    JUDGE

## LETTER OPINION

June 17, 2008

Michael D'Aquanni
Roth Horowitz, LLC
150 Morris Avenue, Suite 206
Springfield, NJ 07081
*Attorney for Plaintiff*s

Susan Scott
Deputy Attorney General of New Jersey
Richard J. Hughes Justice Complex
P.O. Box 112
Trenton, New Jersey 08625-0112
*Attorney for Defendants Northern State Prison, New Jersey*
*Department of Corrections, Devon Brown, and Lydell Sherrer*

    Re:    *Estate of Tyree Wilson  v. Northern State Prison, et al.*
              Civil Action No. 07-cv-1942 (WJM)

Dear Litigants:

    This matter comes before the Court on a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) by Defendants Northern State Prison, New Jersey Department of Corrections, Devon Brown, and Lydell Sherrer (collectively, "Moving Defendants"). There was no oral argument. Fed. R. Civ. P. 78. For the reasons stated below, Moving Defendants' motion is **GRANTED IN PART and DENIED IN PART**.

### BACKGROUND

    This is a civil rights case arising from the death of Tyree Wilson. On January 16, 2005, the decedent, Tyree Wilson, allegedly committed suicide by hanging himself in his prison cell while incarcerated at Northern State Prison. (Second Am. Compl. ¶¶ 40, 46.) It is alleged that prior to his death, Wilson sustained "injuries deliberately, wantonly, and

maliciously inflicted upon him." (Second Am. Compl. ¶ 29.) Furthermore, various officers, agents, and employees of NSP were "deliberately indifferent to the medical needs of [Wilson]." (Second Am. Compl. ¶¶ 47, 49.) Wilson had been placed on suicide watch on at least two prior occasions for exhibiting signs of mental illness or other medical condition. (Second Am. Compl. ¶ 41.) The physicians, psychiatrists, and psychologists employed by Defendant CFG Health Systems, LLC who examined and/or treated Wilson are alleged to have failed to appropriately diagnose and treat him. (Second Am. Compl. ¶ 43.) On the night of the alleged suicide, Defendants Todd Barnett and Craig Sears, prison guards at NSP, "failed to conduct the required rounds in the Unit in which [Wilson] was placed for close observation, exhibiting extreme deliberate indifference to [Wilson]'s needs." (Second Am. Compl ¶ 45.) It is alleged that as a result of these acts or omissions, Wilson died on January 16, 2005.

On January 12, 2007, Plaintiffs the Estate of Tyree Wilson, Pamela Wilson, and Terrance Wilson filed a complaint in the Superior Court of New Jersey against the New Jersey Department of Corrections ("NJDOC"), Northern State Prison ("NSP"), former NJDOC Commissioner Devon Brown, former NSP Administrator Lydell Sherrer, and Correctional Medical Services, Inc. ("CMS"). On April 25, 2007, the case was removed to this Court by Defendant CMS. Plaintiffs filed an Amended Complaint on August 9, 2007 and included additional defendants.

Moving Defendants filed, and then later withdrew, a motion to dismiss the Amended Complaint for failure to state a claim. On December 11, 2007, Plaintiffs filed a Second Amended Complaint (the "Complaint") and added several new claims and defendants. The Complaint states claims of assault and battery, negligence, medical malpractice, federal and state civil rights violations, failure to supervise and train, and wrongful death. These claims are based upon allegations that the various defendants deliberately and negligently failed to diagnose and treat Wilson's medical and psychiatric condition. The Complaint additionally alleges that certain individual defendants deliberately used excessive force, with the intent to inflict unnecessary and wanton pain and injury, contributing to Wilson's death. Furthermore, Moving Defendants are alleged to have failed to properly train and supervise their staff from committing harm to Wilson.

Moving Defendants filed a second motion to dismiss the Complaint. The second motion to dismiss is currently before the Court.

## ANALYSIS

Moving Defendants bring this motion to dismiss on the following grounds: (1) 42 U.S.C. §1983 does not authorize suits against Moving Defendants in their official

capacities, because they are not "persons" within the meaning of the statute; (2) Plaintiffs' claims of mere negligence and medical malpractice in Counts Two, Three, Four, and Six are not cognizable claims under 42 U.S.C. § 1983; (3) the New Jersey Tort Claims Act provides the Moving Defendants with immunity; and (4) punitive damages are not warranted from the facts as pled.[1]  As explained below, the Court grants Moving Defendants' motion in part and denies its motion in part.

**A.    Standard of Review**

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Although a complaint need not contain detailed factual allegations, "the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).  Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level. *See id*. at 1964-65.  Furthermore, although a court must view the allegations as true in a motion to dismiss, it is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F. 3d 187, 211 (3d Cir. 2007).

**B.    42 U.S.C. § 1983 Claims against Moving Defendants**

---

[1] Moving Defendants also argued that the Fifth Amendment protections do not apply to Wilson, as a prison inmate.  Plaintiffs concede that there can be no Fifth Amendment violation in this case. (Pls.' Opp. Br. 15.)  Therefore, Plaintiffs' claims based upon violations of the Fifth Amendment are dismissed.

1. **NJDOC and NSP**

Moving Defendants argue that Plaintiffs have failed to state claims under 42 U.S.C. § 1983, as they are not "persons" within the meaning of the statute. 42 U.S.C. § 1983 creates a civil cause of action for certain violations of a person's constitutional rights. It provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

A state or governmental entities considered arms of the state, however, are not "persons" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, this Court finds, in agreement with other courts within this district, that the New Jersey Department of Corrections and Northern State Prison are arms of the State of New Jersey and are not subject to suit under § 1983. *See, e.g.*, *McDaniel v. N.J. Dep't of Corr.*, No. 08-0239, 2008 U.S. Dist. LEXIS 15625, *8-9 (D.N.J. Feb. 29, 2008); *Robles v. Albino*, No. 07-1026, 2007 U.S. Dist. LEXIS 44227, * 10-11 (D.N.J. June 19, 2007); *Grabow v. Southern State Correctional Facility*, 726 F. Supp. 537, 538 (D.N.J. 1989). Accordingly, the Court will dismiss the § 1983 claims against the NJDOC and NSP.

2. **Defendants Brown and Sherrer in their official capacities**

Moving Defendants also contend that Plaintiffs' claims against Defendants Brown and Sherrer in their official capacities should similarly be dismissed for not falling within the meaning of the word "person" for purposes of § 1983. The Court agrees to the extent that the § 1983 claims against Defendants Brown and Sherrer seek monetary damages.

A § 1983 claim for monetary damages against an official of the state while acting in his or her official capacity is not distinguished from a claim against the state itself. *See Will*, 491 U.S. at 71. A claim for injunctive relief, however, treats officials acting within their official capacity as "persons" for purposes of § 1983. *See id*. at 71 n.10 ("a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'")(citations omitted); *Powell v. Ridge*, 189 F.3d 387, 401 (3d Cir. 1999)("a state official sued for injunctive relief is a 'person' under § 1983 "). Although

only monetary damages are requested on the face of the Complaint, Plaintiffs state that they also seek declaratory and injunctive relief. (Pls.' Opp. Br. 15.)  Therefore, Plaintiffs' § 1983 claims, to the extent that monetary damages are sought against Defendants Brown and Sherrer in their official capacities, will be dismissed.

### 3. Negligence claims

With respect to Counts Two, Three, Four, and Six of the Complaint, Moving Defendants argue that these claims, as claims of negligence or mere medical malpractice, are not recognized actions under 42 U.S.C. § 1983.  See *White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990)("[m]ere medical malpractice cannot give rise to a violation of the Eighth Amendment").  Allegations of "unnecessary and wanton infliction of pain" or "deliberate indifference to the serious medical needs" of inmates, however, are sufficient to establish a constitutional violation.  *Id*.  Although the Court agrees with Moving Defendants that mere negligence claims cannot give rise to violations of the Eighth Amendment, the Court finds that dismissal of the Counts is not warranted at this time.

Initially, the Court notes that Counts Two, Three, and Four also assert claims for common law negligence in addition to their claims of violations of § 1983.  Even if the Court were to conclude as urged by Moving Defendants that these § 1983 claims were claims of mere negligence and malpractice, the Court would nevertheless be compelled to deny their motion to the extent that Plaintiffs' claims are alternatively grounded in theories of state common law.

In turning to Moving Defendants' § 1983 argument as applied to the surviving Moving Defendants Brown and Sherrer, the Complaint appears to recite sufficiently egregious theories of culpability on the part of Defendants Brown and Sherrer to sustain these Counts at this stage.  Plaintiffs allege that Defendant Brown was "deliberately indifferent to the medical needs of [Wilson]," "intentionally ignore[d] and otherwise fail[ed] to provide proper medical treatment to Tyree Wilson with the intent of inflicting serious bodily harm and even death," and "deliberately and/or negligently inflicted . . . trauma." (Second Am. Compl. ¶¶ 6, 47-49, 58, 75, 89, 114, 121.)  Plaintiffs also allege that Defendant Sherrer engaged in similar acts and was additionally "responsible for the detention, housing and care of Tyree Wilson, as well as responsible for establishing the policies and procedures of" the NSP. (Second Am. Compl. ¶¶ 7, 47-49, 58, 75, 89, 114, 121.)  In viewing the allegations as pled, the Court concludes that the Complaint sufficiently states more than mere negligence or medical malpractice with respect to the alleged liability of Defendants Brown and Sherrer.

C.     **New Jersey Tort Claims Act Immunity**

Moving Defendants argue that the New Jersey Tort Claims Act, N.J.S.A. 59:1-1, *et seq*. (the "Act"), establishes immunity for the Moving Defendants relating to (1) the intentional acts of the agents, officers, and employees NJDOC and NSP, and (2) the alleged failure to diagnose and treat Wilson's medical and mental health condition.  In opposition, Plaintiffs request that the Court refrain from ruling on the application of the Act's immunity as "Plaintiffs have not yet completed discovery that will certainly shed light on the circumstances leading to the Decedent's untimely death."  (Pls.' Opp. Br. 18.) Although the Court recognizes that full discovery has not yet been completed in this case, the Court finds that the issue of immunity in this case may be resolved as a matter of law based upon the facts as pled in the Complaint.

The Act provides immunity to municipal entities and supervisors for the intentional misconduct of municipal employees based upon a theory of *respondeat superior*.  *See McDonough v. Jorda*, 214 N.J. Super. 338, 350, 519 A.2d 874 (N.J. Super. Ct. App. Div. 1986); *see also Damiani v. W. Deptford Twp*., No. 07-2884, 2008 U.S. Dist. LEXIS 17581 *16-17 (D.N.J. March 7, 2008).  Specifically, it holds that "a public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct."  N.J.S.A. 59:2-10.  Thus, to the extent that Plaintiffs assert claims of intentional torts, such as the assault and battery claims in Count One, against Moving Defendants based on a theory of vicarious liability, such claims are dismissed.  *See*, *e.g*., *Damiani*, 2008 U.S. Dist. LEXIS at *17.

Moving Defendants additionally assert immunity under the Act for the alleged failure to diagnose and treat Wilson's medical condition.  N.J.S.A. 59:6-4 states:

> Except for an examination or diagnosis for the purpose of treatment, neither a public entity nor a public employee is liable for injury caused by the failure to make a physical or mental examination, or to make an adequate physical or mental examination, of any person for the purpose of determining whether such person has a disease or physical or mental condition . . ..

Thus, the general rule is that public entities and public employees enjoy immunity for claims arising from a failure to conduct a mental examination for the purpose of determining whether that person has a mental condition, but carves out an exception for those examinations or diagnoses which are conducted for the purpose of treatment.  *Kemp by Wright v. State*, 147 N.J. 294, 300 (1997).  Furthermore, immunity is extended in

certain circumstances for the failure to diagnose or treat mental illness.  N.J.S.A. 59:6-5 states:

> a. Neither a public entity nor a public employee is liable for injury resulting from diagnosing or failing to diagnose that a person is afflicted with mental illness or is a drug dependent person or from failing to prescribe for mental illness or drug dependence; provided, however, that nothing in this subsection exonerates a public entity or a public employee who has undertaken to prescribe for mental illness or drug dependence from liability for injury proximately caused by his negligence or by his wrongful act in so prescribing.
>
> b. Nothing in subsection a. exonerates a public entity or a public employee from liability for injury proximately caused by a negligent or wrongful act or omission in administering any treatment prescribed for mental illness or drug dependence.

Therefore, the Act provides "immunity in all circumstances for injury resulting from the failure to prescribe, and likewise provides no immunity in any circumstances for injury resulting from the affirmative act of prescribing."  *Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991).

In this case, the Complaint alleges that Wilson was placed by the Moving Defendants on suicide watch on at least two occasions prior to his death, and that Wilson had been evaluated by NSP physicians, psychiatrists, and/or nurses.  (Second Am. Compl. ¶¶ 41-42, 44.)  These medical personnel are alleged to have failed to properly treat, medicate, and/or diagnose Wilson's medical and mental health condition during their treatment or examination of Wilson.  (Second Am. Compl. ¶ 43.)  The subsequent denials of medical care and treatment by the Moving Defendants are also alleged to have contributed to his death.  It is logical for the Court to infer from these allegations that the defendants had already identified Wilson with a medical or mental health condition of sufficient severity as to require suicide monitoring, and that there were medical diagnoses and/or examinations related to his medical and mental health condition.  Therefore, the Court finds that the Complaint sufficiently state claims for (1) Moving Defendants' negligent diagnosis or examination for the purposes of treatment and (2) Moving Defendants' negligent failure to diagnose or prescribe during the course of administering Wilson's treatment for his medical and mental health condition.

### D.     Punitive Damages

Lastly, Moving Defendants argue that punitive damages are unavailable to Plaintiffs as a matter of law. Plaintiffs respond that Defendants' conduct in "beat[ing] [Wilson] to death, fail[ing] to provide adequate medical attention, and cover[ing]-up their actions" is sufficient to sustain an award of punitive damages. (Pls.' Opp. Br. 21.) The Court agrees with both parties in part.

N.J.S.A. 59-9 states that no punitive damages are available against a public entity. Therefore, punitive damages are barred against Defendants NJDOC and NSP for any state law claims. New Jersey courts, however, have refused to extend this protection from punitive damages to public employees. *See Mantz v. Chain*, 239 F. Supp. 2d 486, 508 (D.N.J. 2002)(listing New Jersey cases holding that punitive damage immunity did not apply to public employees). Thus, the Court finds that Plaintiffs' claims of punitive damages against Defendants Brown and Sherrer may not be dismissed as a matter of law. The issue of whether their respective conduct rises to the level of intent required for an award of punitive damages is premature at this stage.

## CONCLUSION

For the reasons stated above, Moving Defendants' motion to dismiss is granted in part and denied in part. An appropriate order follows.


                                                                s/William J. Martini
                                                                **William J. Martini, U.S.D.J.**